IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SELWYN G. DARBEAU, )
)
    Plaintiff, )
) Civil Action No.: 06-01081 (AK)
v. )
)
PROGRESSIVE TECHNOLOGY )
FEDERAL SYSTEMS, INC. )
)
    Defendant. )
)
)

## AFFIDAVIT OF URSULA HOLMES

I, Ursula Holmes, do hereby state and declare, under penalty of perjury, that the following is true:

1.     I have personal knowledge of the facts contained herein; I am over the age of eighteen (18) years; and I am otherwise being competent to testify in this matter.

2.     I am over the age of forty (40).

3.     I am an employee of the Library of Congress. I began working for the Library of Congress in October of 2005 in the Library of Congress' office of contracts & grants management, contracts team. My position with the Library of Congress in October of 2005 was as the head of operations for the contracts team, and I held that position until March of 2007 when I was temporarily promoted to the position of acting chief of contracts.

4.     When I became the head of contract operations in October of 2005, the plaintiff, Selwyn Darbeau, was already working as a contract specialist for the defendant, Progressive Technology Federal Systems, Inc. in the contract operations office of the Library of Congress.

5.     I did not know the age of the plaintiff when he worked for the Library of Congress

EXHIBIT 3

in October to December of 2005, and I never had any discussions with Mr. Darbeau about his age or about my age.

6. The plaintiff was one of five contract specialists. I did not, and do not, know the ages of any of the other four contract specialists who worked in contract operations.

7. After three (3) months of working with the plaintiff, I concluded that his performance was not acceptable and far inferior, particularly when I compared his performance to the performances of the four other contract specialists.

8. Specifically, in the three (3) month period that I worked with Mr. Darbeau, I found that (a) he was unable to effectively manage his workload; (b) I consistently received phone calls and emails from our customers regarding his failure to follow up or simply respond to their requests for updates; (c) I was rarely able to sign the documents that Mr. Darbeau prepared for my signature when initially submitted due to his inability to catch typographical errors as well as process errors; (d) that Mr. Darbeau did not grasp the use of the Library's electronic acquisition system, Momentum as his data entries often required the assistance of our IT staff to fix errors; (e) that Mr. Darbeau promised to "get back to me" with the status of an assignment and he failed to do so on several occasions; and (f) Mr. Darbeau gave me updates on assignments that were false which caused me to then provide inaccurate information to our customers. I gave Mr. Darbeau ample feedback regarding his performance issues and comments about his work product. From my observations of Mr. Darbeau over the three (3) month period, it became clear to me that Mr. Darbeau would not improve.

9. Consequently, shortly before the Christmas Holiday of 2005, I spoke to Mr. Darbeau's supervisor, Sheila Hess, about my determination that Mr. Darbeau's work was

unsatisfactory and about my determination that Mr. Darbeau needed to be replaced.

10. On December 29, 2005, I sent an email to Ms. Hess to confirm our earlier conversation about Mr. Darbeau's unsatisfactory performance. A true and accurate copy of that email is attached to this Affidavit as Exhibit 3(A). In my email to Ms. Hess, I wrote to Ms. Hess and told her that Ms. Hess should contact Mr. Darbeau to inform him that his services at the Library of Congress were no longer needed. I requested the return of Mr. Darbeau's Library of Congress badge and the return of Mr. Darbeau's keys by Ms. Hess to me.

11. There was no plan to hire a replacement candidate for Mr. Darbeau that was less experienced than he. Rather, I told Ms. Hess that I wanted a fully functioning contract specialist who would be paid at the same rate as Mr. Darbeau. I specifically requested that Ms. Hess provide me with the resumes for three replacement candidates who would be fully functioning contract specialists with federal acquisition experience by January 4, 2006, so that the Library of Congress could select the best replacement candidate for Mr. Darbeau. I informed Ms. Hess that I would only accept an entry level contract specialist that the Library of Congress would train if she was unable to find an experienced replacement candidate and, if only an entry level contract specialist was available, we would have to re-negotiate the rate paid by the Library of Congress to Progressive Technology Federal Systems, Inc.

12. Although Mr. Darbeau's performance was significantly poorer than the other employees of Progressive Technology Federal Systems, Inc., I had evaluated the other employees, such as Chelsea Baker, and concluded that Ms. Baker's performance needed improvement for her to continue working at the Library of Congress. While I do not know Ms. Baker's age in 2005, she appeared to be much younger than my age. In the email which is attached to this Affidavit, I told Ms. Hess that I intended to replace Ms. Baker by February of

2006 if her performance did not improve in January of 2006.

13.    I absolutely made no employment decision about Mr. Darbeau or anyone else based upon any illegal factor, including age, and all of my decisions were solely based upon the individual performance of each individual employee.


I affirm that this Affidavit is executed on this 5th day of October, 2007, under penalties of perjury, and that its contents are true and correct:

_Ursula Holmes_
Ursula Holmes

| | |
|---|---|
| **From:** | Ursula Holmes [uhol@loc.gov] |
| **Sent:** | Thursday, December 29, 2005 11:44 AM |
| **To:** | shess@ptfs.com |
| **Cc:** | Jackie Johnson |
| **Subject:** | Request for replacement candidate |
| **Attachments:** | SOW - CS FPL.doc; SOW- CS Trainee.doc |

  

SOW - CS FPL.doc    SOW- CS
(25 KB)             Trainee.doc (25 KB)

Hi Sheila,

As agreed during our conversation just before the Christmas Holiday, I'm gett[ing] you via email regarding the need to replace current PTFS employees working on Office of Contracts & Grants Management, Contracts Team.

Since these individuals work for PTFS and not the Library, informing them of [this] as LOC contract employees is your responsibility.

After managing the Operations Section of the Contracts Team for three months [I] found that the services provided by Selwyn Darbeau are less than acceptable.

a. He is unable to effectively manage his workload; b. I consistently recei[ve] calls and emails from our customers regarding his failure to follow up or sim[ply] to their requests for updates; c. I am rarely able to sign the documents Sel[wyn] for my signature when initially submitted due to his inability to catch typog[raphical] errors as well as process errors; d. Selwyn has not grasped the use of the Li[brary] electronic acquisition system (Momentum) as his data entries often require the [use] of our IT staff to fix errors; e. On several occasions, Selwyn has promised t[o get back] to me" with the status of an assignment and he has failed to do so. In additi[on he has] given me updates on assignments that were false which caused me to provide ina[ccurate] information to our customers.

Currently, Selwyn is on vacation and is scheduled to return to the office afte[r the new] years holiday. As his employer, you need to contact Selwyn, while he is on va[cation and] let him know that his services at LOC are no longer needed. I need you to obt[ain his] Badge and keys and bring those items to my office as soon as possible. We wil[l pack] Selwyn's personal items and have the box ready for you when you come to turn i[n the badge] and office keys.

Please send me at least three resumes for a replacement candidate by Wednesda[y, January] 4, 2006, so we can select the best candidate and bring them on board as quickl[y as] possible.

With regard to Verna Tubman, her performance and level of professionalism is m[arginal, as] she too has been unable to effectively manage her assignments. She tends to s[pend a great] deal of time away from her desk and I believe this contributes to her inabilit[y to turn] quickly on tasks that should be completed within 2 -3 days. I was forced to s[top giving] Verna new assignments to allow her to get "caught up" on the assignments that [she had] on her workload with little or no progress. Lately Verna rarely gets to work [at her] scheduled time of 7:00am. She consistently leaves at or just before 3:30pm bu[t her arrival] time is getting later and later. Please speak with Verna about her performanc[e, her] professionalism, and her punctuality. Please let her know that I am willing t[o keep her] on the team in a probationary status for 30 days (the month of January) to see [if she is] able to improve. If noticeable improvement is not evident, I will be requesti[ng a] replacement for Verna as well.

Finally, with regard to Chelsea Baker, her performance is acceptable in terms [of getting] her assignments completed, usually in a timely manner. However, she fails to

1

**EXHIBIT**

3(A)

requests for updates from me and my requests for "meetings to follow-up" on matters brought to my attention. For example, I sent Chelsea an email that said, let's discuss this in the morning and Chelsea did not respond to the email or see me the next morning. On a few occasions, I have "personally" explained a process or policy to Chelsea, and rather than accept that information and move on, she chose to ignore it or push back with a sly remark. For example, I gave Chelsea "specific" reasons why I was not able to approve a document that she prepared. I tasked her with getting additional information from the customer prior to resubmitting the document to me for my approval. The next person I heard from was the Customer wanting to know why I had not approved their request. I sent Chelsea an email and I asked her what the status of the assignment was. Chelsea's response to me was, "I gave it to you but you wouldn't sign it". That's NOT what I am looking for from a professional contract employee hired to "support" my operation. I actually had to get up from my desk, go to her cubicle, and ask her where were my notes that I had written to her explaining why I could not approve the document. She still had my notes but she made it clear that she did not agree with what I was asking her to obtain from the Customer and basically blew me off.... I had to call the customer "myself" to explain what I needed and why. I resolved the matter with the customer "myself". As with Verna, please speak to Chelsea about her cavalier attitude towards her responsibilities and if a noticeable improvement is not evident after 30 days (the month of January), I will be requesting a replacement for Chelsea as well.

The services currently being provided by Rene Servin and Kendrell Wingfield are exceptional!

To summarize, I am requesting a minimum of 3 resumes for a replacement for Selwyn Darbeau by Wednesday, January 4, 2006. Attached to this email is the Statement of Work for the position currently held by Selwyn. If you are unable to find a fully functioning Contract Specialist with federal acquisition experience, we will accept an entry level Contract Specialist that we can train. In that case, the current rate of $47.60/hr would have to be re-negotiated.

There are two SOWs attached to this email. One is for a Contract Specialist at the full performance level (can function independently) and the other is for a Contract Specialist Trainee. Basically, the Trainee SOW is identical to the Full Performance Level SOW except the Trainee will be assisted (trained) by an experienced Specialist on my staff.

Please speak with Verna and Chelsea to let them know that their performance will be monitored closely during the month of January and if their services are not noticeably improved, they will be replaced by February 2006. If you'd rather I speak with Verna and Chelsea, on your behalf, just let me know.

---
Ursula Y. Holmes
Contracting Officer
Head, Contract Operations Section
Library of Congress
Office of Contracts and Grants Management (LA 325)
202-707-8604 - office
202-707-8611 - fax
uhol@loc.gov - email

2