IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SELWYN G. DARBEAU, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 06-01081 (AK) |
| PROGRESSIVE TECHNOLOGY FEDERAL SYSTEMS, INC. | ) |
| Defendant. | ) |

**REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The defendant, Progressive Technology Federal Systems, Inc. ("PTFS") by and through its attorneys, Deborah Murrell Whelihan and JORDAN, COYNE & SAVITS, L.L.P., submits this Reply Memorandum in support of its Motion For Summary Judgment and in response to the plaintiff's Oppositions to its Motion For Summary Judgment and states as follows:

As an overview, the plaintiff has failed to make a sufficient showing of any material facts that would support his claim of age discrimination or that would allow that claim to survive summary judgment. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999)(The central purpose of the summary judgment device is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial); see also, Dobbs v. Roche, 329 F. Supp. 2d 33, (D.D.C. 2004)(The non-moving party must present specific facts that would enable a reasonable jury to find in his favor). Instead, in an unsuccessful attempt to portray that there is some inferential dispute of material fact, the plaintiff mischaracterizes the evidence or the effect of that evidence cited in his statement of material facts. However, even those mischaracterizations fail to create even factual

inferences that would establish his claim of illegal age discrimination.  Finally, the plaintiff attempts to circumvent summary judgment, by ironically contriving an alleged discovery dispute about the production of the email that is the defendant's Exhibit 3(A), arguing falsely that he was foreclosed from conducting highly relevant discovery, and then seeking the harshest of penalties by having this Honorable Court deny the defendant's motion for summary judgment when the plaintiff has offered no evidence to show that a trial is necessary.

### A.    The Plaintiff's Claim of Age Discrimination Fails.

The Plaintiff has also failed to meet his burden of establishing his claim of age discrimination.  "To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate that he has material "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." Cuddy v. Carmen, 224 U.S. App. D.C. 287, 694 F.2d 853, 856-57 (D.C. Cir. 1982); Miller v. Lyng, 660 F. Supp. 1375, 1377 (D.D.C. 1987).  Such an inference is only created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Hall v. Giant Food, Inc., 336 U.S. App. D.C. 63, 175 F.3d 1074, 1077 (D.C. Cir. 1999); Paquin v. Fed. Nat'l Mortgage Ass'n, 326 U.S. App. D.C. 224, 119 F.3d 23, 26 (D.C. Cir. 1997) (citing Coburn v. Pan Am. World Airways, Inc., 229 U.S. App. D.C. 61, 711 F.2d 339, 342 (D.C. Cir. 1983)).  To be material, the factual assertion must be capable of affecting the substantive outcome of the

litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. Laningham v. U.S. Navy, 259 U.S. App. D.C. 115, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

Importantly, the plaintiff has no evidence that would show even an inference of any dispute as to a material fact regarding his *prima facie* case, regarding the defendant's legitimate busisness reasons for his termination, or the existence of pretext.

As to the plaintiff's *prima facie* case, the plaintiff cannot show that he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations. Despite that the plaintiff suggest that he was performing his job well enough to meet his employer's legitimate expectations and that Ms. Hess did not have "any basis" for assessing his job performance and wants this Honorable Court to assume that his prior employment by a contractor whose contract with the Library of Congress was sufficient, the plaintiff has no evidence to dispute the evidence from Ms. Holmes that he was not meeting her legitimate expectations and, therefore, not meeting the expectations of the defendant from September 8, 2005 to December 29, 2005. See, Exhibit 3. Consequently, the plaintiff has no evidence to show that he was meeting the defendant's legitimate expectations. Although the plaintiff mischaracterizes the testimony of Ms. Hess and states that the Library of Congress asked to put Mr. Darbeau on the contract to imply satisfactory performance, the testimony of Ms. Hess is different. See, Exhibit 2 at 18-19. Although the plaintiff suggests that Ms. Holmes had not indicated that there were performance problems with the plaintiff, the only evidence is that Ms. Hess relied upon the evaluations of Ms. Holmes to determine whether any of the PTFS workers were meeting the expectations of the Library of Congress. Exhibit 7. The plaintiff himself

admits that he cannot dispute all of the criticisms that Ms. Holmes made about his performance. <u>See</u>, Exhibit 1 at 63-72.  The plaintiff also chose not to produce any evidence regarding his prior performance as a contract specialist before the defendant hired him.  <u>See</u>, Exhibit 5 and the plaintiff's Answers to Interrogatories no. 11 and 19; <u>see also</u>, Exhibit 6 and the plaintiff's Response to Request for Production No. 8. and Response to No. 13.  The plaintiff also did not produce any affidavits to establish that his performance was satisfactory to the Library of Congress or even to his prior employer which lost its contract with the Library of Congress.  The plaintiff also has no evidence that he was disadvantaged in favor of similarly situated younger employees.  The plaintiff has no evidence that younger workers were treated better.  Ms. Baker's removal from the contract because of Ms. Holmes's performance evaluation of her is contrary to the plaintiff's claim.  Mr. Green was only hired long after the decision was made by the Library of Congress to remove Mr. Darbeau from the contract since the defendant did not have any experienced contract specialists to provide as a replacement which was Ms. Holmes' preference.  Consequently, the plaintiff cannot establish a *prima facie* case of age discrimination.

  The Plaintiff cannot produce any direct evidence of discriminatory animus on the part of the defendant.  Exhibit 1 at 84-85.  The plaintiff has evidence of disparate treatment and even no indirect evidence to show that Ms. Holmes treated younger workers under the age of forty (40) preferentially.  <u>See</u>, Exhibit 5 at the plaintiff's Answer to Interrogatory Nos. 13, 14, 15, and 19.  The plaintiff has no evidence that the defendant had any reason to believe that Ms. Holmes' criticisms of the plaintiff's performance were as a result of his age.  On the contrary, the undisputed evidence is that the defendant had every reason to believe that Ms. Holmes' criticisms had no connection to the plaintiff's age because of the relationship that Ms. Hess had with Ms.

Holmes despite her age and because of the supported criticisms made by Ms. Holmes about younger workers and of her conclusion that an older worker, Rene Servin, was "exceptional." Exhibit 3, Exhibit 7.

The defendant had legitimate business reasons to terminate the plaintiff. The defendant's reasons included that the on-site supervisory representative of the defendant's customer complained, with documented reasons, that Mr. Darbeau's performance was unacceptable and demanded that he be replaced. The defendant had no choice but to comply with its contractual obligations and customer service obligations to the Library of Congress. The plaintiff's eventual termination was due to the lack of another contractual specialist position with the defendant, which again the plaintiff has no basis to dispute. Under the McDonnell Douglas frame work, the defendant has more than met its burden of showing that unlawful discrimination was not the reason for the plaintiff's termination and that the defendant's legitimate business reasons were.

If the defendant proffers an explanation worthy of credence, which it has, the plaintiff must then show by a preponderance of the evidence that the defendant's asserted legitimate reason is a "pretext" for discrimination by either a direct showing that it was highly probable that the defendant was motivated by discrimination or by an indirect showing that the defendant's reason is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Forman v. Small, 350 U.S. App. D.C. 24, 271 F.3d 285, 292 (D.C. Cir. 2001) (citing Cuddy v. Carmen, 246 U.S. App. D.C. 25, 762 F.2d 119, 122 (D.C. Cir. 1985)). In order to survive summary judgment, the plaintiff has to show that the reasons for the his termination were false and that age discrimination was the real reason for his termination, which he cannot do, and has not done. See, Weber v. Battista, 494 F.3d 179 (D.C. Cir. 2007);

5

Davis v. District of Columbia, 503 F. Supp. 2d 104 (D.D.C. 2007). And "a reason cannot be proved to be 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Here, the plaintiff has no evidence of pretext, on the part of the defendant or on the part of the Library of Congress on which the defendant relied when it removed the plaintiff from his contract specialist position. The plaintiff does not make any effort to rebut the defendant's legitimate, non-discriminatory reasons for the plaintiff's termination because he cannot.

Rather, to distract this Honorable Court about the plaintiff's lack of evidence of age discrimination, the plaintiff compares his situation to the case of Stacey v. Allied Stores Corp., 581 F. Supp. 1103 (D.D.C. 1984); *reversed*, Stacey v. Allied Stores Corp., 768 F.2d 402 (D.C. Cir. 1985). Beyond that the Stacy dealt with a jnov motion after a trial, the Stacey case is clearly inapposite to Mr. Darbeau's situation as Mr. Darbeau was not a highly respected employee whose skills had been recognized by the defendant's management prior to his termination, asMr. Darbeau had no well documented performance history before he became the defendant's employee, and as there was documentary support for the unsatisfactory performance review that Ms. Holmes gave him after working with him for three (3) months. Mr. Darbeau has failed to provide any evidence that would suggest that the defendant's decision to acquiesce in its customer's evaluation of Mr. Darbeau or to terminate him because of the lack of alternative job for him was pretextual. It is insufficient for the plaintiff to argue that it was the defendant's burden to point out if Mr. Darbeau had prior performance problems with Jardon & Howard Technologies, Inc. The defendant had no affiliation with Jardon & Howard Technologies, Inc.

6

Mr. Darbeau failed to produce any evidence that his prior work for a prior contractor at the Library of Congress was satisfactory or even provide sufficient information about his work for the prior contractor. The defendant could not locate the prior contractor to even subpoena Mr. Darbeau's personnel records. It is true that the defendant hired the plaintiff, along with other employees, at the request of the Library of Congress without any knowledge of the past performance of those employees. It is paradoxical that the plaintiff argues that the defendant's decision to hire the plaintiff at its customer's request was not appropriate, but that the defendant's decision to terminate the plaintiff at its customer's request was inappropriate when both decisions were reactionary. Significantly, the plaintiff has no evidence that Ms. Holmes who gave detailed reasons for all of her performance based decisions acted to discriminate against older workers. The plaintiff's cite to Diaz v. Pan-American World Airways, 442 F.2d 385 (5th Cir. 1971), but that case which was a gender discrimination case did not hold that customer preferences were proscribed under the ADEA. There is no obligation for the defendant to investigate a claim of age discrimination under the circumstances of this case where the plaintiff filed his age discrimination claim after he was terminated and never complained of age discrimination while he was employed and where the defendant's customer provided detailed reasons and examples for why the plaintiff's performance was deficient.

      The bottom line is that the plaintiff has failed in his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." Morgan v. Fed. Home Loan Mortgage Corp., 172 F. Supp. 2d 98, 104 (D.D.C. 2001); see also, Marshall v. James, 276 F.Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases" and "Summary judgment is not a disfavored

procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case."). The defendant has met the standard for summary judgment, and summary judgment is appropriate since there is no evidence from which a jury could reach a conclusion other than that the plaintiff's claim of age discrimination fails.

### B.  Plaintiff's Sanction Request Regarding Exhibit 3(A) Has No Merit

The sanctions with which the plaintiff seeks to stave off summary judgment are not warranted. Exhibit 3(A) confirms the performance issues that the Library of Congress, through Ms. Ursula Holmes, observed about the plaintiff during his brief employment by the defendant and then communicated to the defendant when the Library of Congress insisted that Mr. Darbeau be removed from working under the defendant's contract with the Library of Congress. The plaintiff's request that, this Honorable Court deny summary judgment to the defendant because Exhibit 3(A) was part of one of the exhibits used by the defendant to demonstrate its grounds for summary judgment, is simply a obvious ploy to avoid the inevitable judgment to which the defendant is entitled based upon the undisputed evidence supplied by both parties, by distracting this Honorable Court by another specious attack upon the adequacy of the discovery produced by the defendant.[1] Because the defendant did not fail to disclose the information that it was required to disclose, because it had substantial justification for not producing Exhibit 3(A) until it filed its

---

[1]The plaintiff first attacked the defendant's discovery responses to provide support for the re-opening of discovery, although Exhibit 4 demonstrates that attack, like the present attack, was unfounded. As this Honorable Court noted, the plaintiff did not file any Rule 37 motion. In contrast, of course, as Exhibits 5 and 6 show, the discovery produced by the plaintiff was not only untimely but evidence true violations of Rule 37 due to its complete inadequacy. By way of example, and not limitation, the plaintiff avoided answering almost every interrogatory by claiming, incorrectly, that discovery was ongoing and failed to produce any of the documents requested by the defendant, except for the documents that he knew that the defendant had already had obtained.

Motion For Summary Judgment, and because any alleged failure was harmless due to the discovery that the defendant did provide and due to the information available to the plaintiff; the plaintiff has no right to the sanctions that he has requested, including his contention that "summary judgment should not be considered" or should be denied, ostensibly because the defendant did not locate the email attached as Exhibit 3(A) sooner before it produced it as an exhibit in support of its Motion for Summary Judgment. Furthermore, it would be unjust to award any sanctions in favor of the plaintiff because the plaintiff had all of the information contained in Exhibit 3(A) and could have, with appropriate discovery or investigation, obtained Exhibit 3(A), if it was so critical to him, from other sources before the defendant discovered the existence of the email through its continued, diligent efforts to locate the email even after discovery closed for the third time.[2] Exhibit 7. See, Peterson v. Hartman, 227 F.R.D. 13 (D.D.C. 2006)(Sanctions not appropriate where employer met the substantial justification standard under Rule 37); Bonds v. District of Columbia, 93 F.3d 801 (D.C. Cir. 1996)(The central requirement of Rule 37 is that any sanctions must be just); Shea v. Donohoe Construction Co., 795 F. 2d 1071, 1077 (D.C. Cir. 1986)(Sanctions should not be imposed where party does not deserve the sanctions).

     First, sanctions are not appropriate because the defendant, at all times, complied with its discovery obligations under the Federal Rules of Civil Procedure. It would be unfair, and an

---

[2]As the record reflects, discovery closed on July 30, 2007. The deadline was relaxed for the limited purpose of giving the plaintiff an additional five (5) weeks to produce the discovery that he owed to the defendant as a result of an agreement during the August 6, 2007 status conference. As a result of the plaintiff's Motion To Amend The Scheduling Order, discovery was re-opened to allow the plaintiff the opportunities to take the deposition of Ms. Sheila Hess and Ms. Ursula Holmes until September 19, 2007.

unnecessarily harsh sanction, for the plaintiff, through a bald contention of prejudice, to preclude the defendant from using Exhibit 3(A), when that document merely supplements the evidence already obtained in discovery by both parties as well as the information that the plaintiff was given by the defendant in connection with his termination in January of 2006.  See, affidavit of Ms. Sheila Hess, which is attached hereto as Exhibit 7 and incorporated by reference;[3] see also, Exhibit 7(A), which is the excerpt from that email that Ms. Hess provided the plaintiff on January of 2006.

Second, there was substantial justification for why the defendant was unable to disclose the full text of the email.  The defendant could not disclose Exhibit 3(A) at the time that it <u>timely</u> made its initial disclosures in accordance with Federal Rule26(a)(1) or even at the time it timely responded to the plaintiff's belated requests for production of documents because, from June of 2006 until July 30, 2007, it had been unable to locate a copy of the email from Ms. Ursula Holmes to Ms. Hess, despite several searches for relevant documentation, including any emails sent to or by its director of the professional services division, Sheila Hess.  When the defendant made its initial disclosures on April 13, 2007, it was required to provide a copy of, or a description of, any documents that it might "use to support its defenses."  See, Federal Rule of Civil Procedure 26(a)(1)(B).  Ms. Hess remembered the communication from Ms. Holmes about her dissatisfaction about the plaintiff's performance, but recalled the communication to have been oral.  Exhibit 7.  Since the defendant did not know of the existence of the email and since

---

[3]Under the first agreed upon Scheduling Order issued by this Honorable Court on March 22, 2007, initial disclosures were due on April 13, 2007, with which deadline the defendant complied.  The plaintiff, however, without an extension made his initial disclosures on April 20, 2007.

Ms. Hess, at the time, did not recall how she received Ms. Holmes' communications about the plaintiff but merely remembered the substance of the communications, the defendant could not identify the document (Exhibit 3(A)) and the defendant did not intend to rely upon that email to support its defenses at the time that the defendant made its disclosures. See, Exhibit 7. Thus, the defendant did not fail to disclose information when it timely made its initial disclosures since it was ignorant of the email of which the plaintiff possessed excerpts and of the full text of the email that Ms. Hess had received from Ms. Holmes on December 29, 2005. See, Exhibit 7(A), which is attached to the affidavit of Ms. Hess (Exhibit 7) and which is the partial copy of, and excerpts from, the one email that the plaintiff had and that he produced at his July 3, 2007 deposition that was exhibit 3 to the plaintiff's deposition; see also, Exhibit 7(B),[4] which is attached to the affidavit of Ms. Hess (Exhibit 7) and which is a copy of the email which Ms. Hess located after her deposition on September 20, 2007. Based upon the plaintiff's untimely Rule 26(a)(1) initial disclosures, and until the plaintiff was deposed on July 3, 2007, the defendant was mislead by the plaintiff's initial disclosures that there were multiple emails "relating to communications between Sheila Hess and Ursula Holmes with respect to his performance and termination" and understood that the plaintiff had copies of these emails, notwithstanding that the defendant could not locate any of the emails identified by the plaintiff. See, plaintiff's Rule 26(A)(1) Disclosures; Exhibit 7. Nevertheless, following the plaintiff's disclosure about the supposed existence of multiple emails on April 20, 2007, the defendant attempted to discover the emails through another search of its records, without success. Exhibit 7. Through counsel, the

---

[4]The defendant has attached another copy of the full text email because, in reviewing the filed pdf. version of Exhibit 3(A), the defendant's counsel discovered that some of the text on the right hand margin failed to scan completely. Exhibit 7(B) is a complete copy of Exhibit 3(A).

defendant also contacted the Library of Congress, but, without dates for when the emails were sent, the Library of Congress was unable to locate copies of the emails. The Library of Congress also had no personnel records for the plaintiff since he was never its employee, including a hard copy of the email (Exhibit 3(A)). The defendant first learned that there was but one email from the plaintiff at his deposition on July 3, 2007, but the plaintiff only had the excerpted email without a date. See, Exhibit 7(A). Following the plaintiff's deposition, the defendant, through Ms. Hess, again searched for the email without locating the email. See, Exhibit 7. The plaintiff initiated no discovery until propounding written discovery on June 23, 2007 (which was received on June 27, 2007) and then sending corrected written discovery requests on June 29, 2007. Rather than protest that the plaintiff's written discovery requests had been untimely, the defendant timely responded to those requests on July 26, 2007, after again searching for the full text of the email. See, Exhibit 7. Despite the plaintiff's lack of knowledge that the defendant continued to search for the email even after discovery closed, the plaintiff initiated no other discovery to obtain a copy of the full text of the email.[5] Tellingly, the plaintiff never even complained, even informally, to the defendant about the defendant's failure to produce the full text of the email, never even complained to the defendant about the failure to produce the full text of the email at the deposition of Ms. Hess, never even asked Ms. Hess at her deposition what efforts that she had made to locate the full text of the email or why those efforts had not been successful, and did not seek to obtain a copy of the email from the Library of Congress, even through proper discovery. See, Exhibit 2.

---

[5]The plaintiff had indicated that he intended to depose Ms. Holmes, but, based upon information and belief, the plaintiff did not make that request for deposition timely and did not comply with federal requirements to depose Ms. Holmes.

Third, the plaintiff has no legitimate basis for complaining about the adequacy of the defendant's discovery, particularly given the plaintiff's own non-responsive discovery production, particularly given the excusable circumstances regarding the defendant's delayed discovery of Exhibit 3(A) as set forth in Exhibit 7, and particularly since the email which the plaintiff had clearly was missing the detail to show that it even was an email.[6] Under the March 22, 2007 Scheduling Order, to which both parties had agreed, discovery was supposed to end on, and be completed by, July 30, 2007. After failing to timely produce his initial disclosures, the plaintiff did not note any depositions prior to July 30, 2007, including the defendant's corporate designee or Ms. Hess and made no effort to depose any of the Library of Congress employees. Instead, with less than thirty (30) days remaining for discovery, the plaintiff propounded written discovery on June 23, 2007 and then sent corrected written discovery on June 29, 2007, by mail. The defendant provided its written discovery responses, including all documents that it had in its possession or could locate to the plaintiff on July 26, 2007. As this Honorable Court will recall, a telephone status conference was held on August 6, 2007, at which time the only issues raised by either party as to any discovery failures were that the plaintiff's answers to the defendant's interrogatories and the plaintiff's responses to the defendant's requests for production of documents were overdue and owing and those responses were necessary for the defendant to finalize and file its motion for summary judgment. As a result of the discussion before this Honorable Court, the plaintiff promised to provide discovery on or before August 20, 2007 so

---

[6]In his opposition, the plaintiff contends that the defendant was the only one who knew that the plaintiff's document was not the full document, which is absurd since Exhibit 7(A) has no email identifying information and since the plaintiff was with Ms. Hess when she printed Exhibit 7(A).

that the defendant could file its motion for summary judgment by September 4, 2007.[7] The plaintiff did not request that discovery be re-opened or raise any issue about the failure of the defendant to locate and produce the email that the plaintiff had testified in his July 3, 2007 that he believed existed. On August 30, 2007, the plaintiff filed his Motion to Amend the Scheduling Order, in which he requested a re-opening of the discovery deadline for the limited purpose to depose Ms. Hess and Ms. Ursula Holmes. In that Motion to Amend the Scheduling Order, the plaintiff also represented that his counsel had communicated "his need for additional time to complete discovery to counsel for the defendant."[8] The plaintiff's Motion To Amend the Scheduling Order was granted, yet the plaintiff never noted the depositions of Ms. Hess or Ms. Holmes. Although the defendant produced Ms. Hess on the first date that she and the undersigned defense counsel were available, September 20, 2007, the plaintiff did not send a notice of deposition.[9] The plaintiff decided not to comply with the federal regulations to depose Ms. Holmes. Consequently, the plaintiff has no basis to complain in response to the defendant's motion for summary judgment that he was denied discovery that he requested from the plaintiff.

Fourth, and finally, the defendant disagrees that Exhibit 3(A) was "critical" to the plaintiff's case. The defendant does admit that Exhibit 3(A) is an important document for it because the email corroborates that Ms. Holmes was not discriminating against any of the

---

[7]The plaintiff mailed his discovery responses which contained virtually no information a

[8]Upon his return from vacation on August 25, 2007, the plaintiff's counsel contacted the undersigned defendant's counsel to explain that he needed more time for the plaintiff to provide his written discovery responses to the defendant and he indicated that he was considering requesting an enlargement of discovery so that he could depose Ms. Hess and Ms. Holmes.

[9]On September 19, 2007, the undersigned defense counsel had to contact the plaintiff's counsel to confirm that the deposition of Ms. Hess was even taking place.

defendant's employees on the basis of their age since she had reasons for her unsatisfactory evaluation of both younger and older workers and since she originally demanded that the plaintiff's replacement be an experienced contract specialist if the defendant could supply such a person. Consequently, by its text, the defendant believes that the inability of the defendant to locate the full text of the email (Exhibit 3(A)/Exhibit 7(A)) before discovery ended was harmless to the plaintiff's case. The plaintiff suggests, wrongly, that he lacked information regarding his former co-workers, which suggestion is belied by his own deposition testimony about his post termination contacts with his former co-workers both employed by the defendant and employed by the Library of Congress and refuted by the information provided by the defendant in its Rule 26(a)(1) disclosure statement and in its answers to the plaintiff's interrogatories (Exhibit 4). Prior to this litigation, the plaintiff had the excerpts from the email written by Ms. Holmes because Ms. Hess freely gave those excerpts to him when he met with her to discuss his termination due to the Library of Congress' dissatisfaction with his performance as a contract specialist in January of 2006. Exhibit 1 at 70. Beginning with its original answer, the defendant, relying in part upon the recollection of Ms. Hess about her communications with Ms. Holmes, communicated that its termination of the plaintiff derived from the complaints made by the Library of Congress, of which the plaintiff was aware having learned the details about the communication made by Ms. Holmes to Ms. Hess. According to the plaintiff in his deposition testimony (as opposed to his answers to defendant's answers to interrogatories where he failed to provide meaningful or responsive answers to any of the defendant's interrogatories), he himself had many alleged conversations with several of his former co-workers after he was terminated about his termination and his claim of age discrimination, including Ms. Hess. See, Exhibit 1 at

15

59, 76, 82, 89-96, 99-114.  In his deposition, the plaintiff testified to his knowledge about his co-worker contract specialist "comparators" included Ms. Tubman,[10] Ms. Baker, and Mr. Servin. Exhibit 1 at 63.  The plaintiff was not prevented from inquiring into the nature of the conversations between Ms. Hess and Ms. Holmes about the plaintiff at the deposition of Ms. Hess by only having Exhibit 7(A) instead of Exhibit 3(A)(also Exhibit 7(B)).  The defendant provided all of the information that is contained in Exhibit 3(A)(also Exhibit 7(B)) in its answers to the plaintiff's interrogatories.  See, Exhibit 4 at answers to interrogatory nos. 3 and 4. Clearly, the plaintiff's failure to have the full text of the email (Exhibit 3(A) and Exhibit 7(B)) did not prejudice the plaintiff's discovery efforts.

    In sum, there is no merit whatsoever to the plaintiff's request that the defendant be sanctioned for its failure to provide the full text of a document of which the plaintiff already had the critical parts.  The plaintiff had all of the information contained in the email or the opportunity to conduct timely discovery to obtain the information.  The plaintiff should not be rewarded for his specious claim that discovery was withheld when that discovery only confirms the evidence contained in the deposition of Ms. Hess, the affidavit of Ms. Holmes, and the affidavit of Ms. Hess.  Summary judgment is appropriate based upon all of the evidence, including Ms. Holmes' email to Ms. Hess (Exhibit 3(A)/Exhibit 3(B).

---

[10] Although in footnote no. 4 of the plaintiff's Opposition To Motion For Summary Judgment (p. 10), the plaintiff suggests that Ms. Holmes was critical of another worker over the age of forty (40) and that he was not able to explore discovery as to Ms. Tubman.  In his deposition, the plaintiff contended that Ms. Holmes displayed a preference for a younger worker than he, Ms. Tubman. Exhibit A at 77-78.

For all of the above reasons, the defendant, Progressive Technology Federal Systems, Inc., requests that its Motion For Summary Judgment be granted.

Respectfully submitted,

JORDAN, COYNE & SAVITS, L.L.P.

By: /s/ **DEBORAH MURRELL WHELIHAN**
Deborah Murrell Whelihan, #412454
1100 Connecticut Avenue, N.W.
Suite 600
Washington, D.C.  20036
Telephone:  (202) 296-4747
Email: d.whelihan@jocs-law.com

Attorneys for Defendant Progressive Technology
Federal Systems, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Defendant's Reply Memorandum to Plainiff's Opposition to Defendant's Motion For Summary Judgment, Exhibit 7, 7(A), and 7(B) was served electronically on this 15th day of November, 2007, to:

John F. Pressley, Jr., Esquire
7600 Georgia Avenue, NW
Suite 412
Washington, DC 20012


/s/ **DEBORAH MURRELL WHELIHAN**
Deborah Murrell Whelihan