IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SELWYN G. DARBEAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06-01081 (AK) |
| v. ) | |
| ) | |
| PROGRESSIVE TECHNOLOGY ) | |
| FEDERAL SYSTEMS, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## AFFIDAVIT OF SHEILA HESS

I, Sheila Hess, do hereby state and declare, under penalty of perjury, that the following is true:

1.     I have personal knowledge of the facts contained herein; I am over the age of eighteen (18) years; and I am otherwise being competent to testify in this matter.

2.     I was employed by the defendant, Progressive Technology Federal Systems, Inc. ("PTFS"), beginning in September of 1997 until I retired on October 1, 2007.  During my employment by PTFS, I held the position of the director of the professional services division.  I also held that position before PTFS employed the plaintiff, during the brief and approximate three (3) month time period that the plaintiff was employed by the defendant, and after the date that the plaintiff was terminated by the defendant until my retirement on October 1, 2007.

3.     My date of birth is June 30, 1942, and, at the time that the defendant was forced to terminate the plaintiff, I was sixty-three (63) years of age.  From Mr. Darbeau's charge of discrimination and from this lawsuit, I have learned that Mr. Darbeau is younger than I am.

4.     PTFS did not assume or take over the contract that the plaintiff's prior employer

EXHIBIT

7

had with the Library of Congress. From the Library of Congress, PTFS understood that that

other contract was about to expire and that that other contract would not be renewed or extended.

PTFS did not know any of the specifics about that other contract, other than there was another

contractor and another contract that was about to expire.

     5.     Thus, when PTFS hired the plaintiff in September of 2005 as a contract specialist

under its contract with the Library of Congress, it was because his employer's contract with the

Library of Congress was about to expire. PTFS was asked to absorb all of the affected

employees of the other contractor, and not just Mr. Darbeau, so that those workers would not be

terminated when the contract expired. Without knowing any specifics about the respective

performance of the affected workers, PTFS complied with its customer's request since the goal

of PTFS was to make its customer, the Library of Congress, satisfied with its services. When

those employees of the other contractor were hired, PTFS did not independently determine, or

verify, the competency of those employees that it absorbed, but, in September of 2005, placed

them in job positions under the PTFS contract with the Library of Congress based upon the skills

that the employees should have had based upon the work that PTFS understood that those

employees had been performing for the Library of Congress for the other contractor. The Library

of Congress made no representations about those employees which it asked PTFS to absorb

under its contract. In the case of Mr. Darbeau, PTFS presumed that he was an experienced

contract specialist with federal acquisition experience who would require little supervision and

who could work independently. Consequently, Mr. Darbeau was placed in a senior contract

specialist position under the existing PTFS contract with the Library of Congress effective as of

September 8, 2005. Until Mr. Darbeau was hired in September of 2005, PTFS had not had any

senior contract specialist employees which it supplied to the Library of Congress or to any of its

other customers. Consequently, PTFS did not know if the plaintiff was able to perform his prior

job functions as a contract specialist, or not, prior to his employment by it.

6.      In October of 2005, Ms. Ursula Holmes became the Contracting Officer's

Technical Representative for the contract that PTFS had with the Library of Congress under

which Mr. Darbeau was employed in September of 2005. My impression of Ursula Holmes, both

when I first met her and during the time that I worked with her as the Contracting Officer's

Technical Representative for the Library of Congress until her promotion by the Library of

Congress, was that she had the same high performance standards for the persons that she

supervised as she had for herself. My opinion of Ms. Holmes during that time period was that

she was a perfectionist.

7.      In late December of 2005, approximately three (3) months after Mr. Darbeau had

been employed by PTFS under its contract and while Mr. Darbeau was on leave, the Library of

Congress, through Ms. Holmes, requested that Mr. Darbeau be removed as a senior contract

specialist under the PTFS contract and replaced with another senior level contract specialist

before he returned to his assignment after the Christmas holidays. The plaintiff's termination by

PTFS resulted from the documented dissatisfaction of the defendant's customer about the

plaintiff's performance, from the insistence that the plaintiff be immediately replaced with a fully

functioning contract specialist with federal acquisition experience, and from the lack of an

alternative senior contract specialist work opportunity for the plaintiff with the defendant.

8.      I never felt that Ms. Holmes had any issue with me because of my age, and I am

older than the plaintiff. In fact, Ms. Holmes and I had a very good, professional working

3

relationship, notwithstanding her dissatisfaction with some of PTFS' employees when she managed the PTFS contract.

9.     As a result of my interaction with Ms. Holmes, I never had any reason to suspect that Ms. Holmes' evaluation of the employees of the defendant, including the plaintiff, was in any way affected by the age of those employees.

10.     At the time that Ms. Holmes expressed her dissatisfaction with the plaintiff's performance, she provided me with very detailed non-discriminatory reasons and explanations for her dissatisfaction with the plaintiff's job performance and for her request that Mr. Darbeau be removed from the PTFS contract. Ms. Holmes' direction that Mr. Darbeau be replaced did not leave PTFS with any choice, but to remove him from the contract and to replace him or be in breach of the contract that PTFS had with the Library of Congress. Because Ms. Holmes had very specific examples of why she believed Mr. Darbeau's performance to be unacceptable for the two (2) months plus that they had worked with one another, I had no reasons in December of 2005 (or even now in hindsight) to even question whether Ms. Holmes' assessment of the plaintiff's performance was motivated by any other factor, including any alleged age discrimination or any alleged preference by Ms. Holmes for younger workers as the plaintiff claimed in his Charge of Discrimination and has claimed in the lawsuit which he has maintained against PTFS.

11.     Rather, the statements communicated by Ms. Holmes to me regarding the plaintiff's performance issues and regarding finding a suitable replacement for the plaintiff in December of 2005 demonstrated to me the complete lack of any relationship between Ms. Holmes' conclusion that the plaintiff's performance was unsatisfactory and the plaintiff's age.

4

For example, when Ms. Holmes informed me that she found the plaintiff's performance to be unsatisfactory and when she insisted upon the plaintiff's replacement, she provided very detailed and reasonable examples of why she found the plaintiff's performance to be unsatisfactory. At around the same time that Ms. Holmes complained about the plaintiff's performance, she indicated that the performance of one older worker, Rene Servin, was exceptional and that a much younger worker, Chelsea Baker, also had some performance issues about which Ms. Holmes was concerned. Ms. Holmes ultimately recommended that Ms. Baker be replaced as a result of her later assessment that Ms. Baker's performance continued to be unsatisfactory, again showing to me that Ms. Holmes did not display any preference for younger workers over older workers.

     12.    I did not directly work with the plaintiff before he was hired by PTFS or even after he was hired by PTFS because the PTFS contract did not provide for the employment of an on-site managerial employee because the management function was retained by the Library of Congress and its personnel. I had to rely upon my customer's assessment of the performance of all of the PTFS' employees under the PTFS contract since the personnel of the Library of Congress worked directly with the PTFS employees assigned to the Library of Congress. I had no basis to dispute the performance evaluation made by Ms. Holmes of the plaintiff in December of 2005, particularly given the detailed documented reasons that she voluntarily provided for her determination that the plaintiff was unsatisfactory. After I received the email from Ms. Holmes (Exhibit 3A to the Motion For Summary Judgment), I spoke to another supervisory employee at the Library of Congress, Mr. Jackie R. Johnson, Jr., who also confirmed that the plaintiff's performance was unacceptable for the reasons articulated by Ms. Holmes.

13.     At the time that the Ms. Holmes decided to replace the plaintiff, PTFS had no trained and independent contract specialists with federal acquisition experience other than the plaintiff, which is why PTFS could not comply with Ms. Holmes' request to supply her with three replacement candidates for Mr. Darbeau and which is why PTFS had no alternative position for Mr. Darbeau. In directing PTFS to replace Mr. Darbeau, Ms. Holmes' preference was for PTFS to supply an experienced and competent contract specialist with federal acquisition expertise, which person could have been younger or older than the plaintiff. Ms. Holmes did not tell me that she wanted someone younger or older than the age of forty (40), but merely requested someone with contract specialist experience. PTFS was unable to provide Ms. Holmes with an experienced contract specialist with federal acquisition expertise because it had no other senior level contract specialist employees or even experienced contract specialists. Thus, it is true that the plaintiff's ultimate replacement was a less experienced employee, Kelly Green who was under the age of forty (40). Because PTFS was unable to supply the Library of Congress with an experienced replacement for Mr. Darbeau, and well subsequent to the decision made by Ms. Holmes to replace the plaintiff, Ms. Holmes reluctantly agreed to accept Mr. Kelly Green as an entry level contract specialist at a reduced hourly rate under the contract because of the training that Mr. Green needed from the Library of Congress personnel. It was certainly not in the financial interests of PTFS to replace Mr. Darbeau with an entry level employee since PTFS had to reduce its charges to the Library of Congress because of the change in position. Additionally, to further illustrate the fact that age played no role in the decisions made by Ms. Holmes as to the contract specialist position that the plaintiff once held, Ms. Holmes became dissatisfied with Mr. Green based upon performance issues that he had, and he eventually was replaced at her request.

14.     It is ludicrous for the plaintiff to have sued PTFS for alleged age discrimination. PTFS had no choice but to terminate the plaintiff when Ms. Holmes demanded that he be replaced since she was, in effect, his on-site supervisor and was the representative of PTFS' customer, the Library of Congress, with the authority to decide which PTFS workers were satisfactory or not.  PTFS had only employed Mr. Darbeau for a short time before Ms. Holmes reported her dissatisfaction about Mr. Darbeau's work.  After he filed his charge of age discrimination with the Library of Congress, Mr. Darbeau contacted me to assure me that he had only identified PTFS in his charge because it had employed him and to inform me that he had no claim of discrimination as to PTFS.

15.     I was deposed on September 20, 2007, almost two years after Mr. Darbeau had been terminated by PTFS.  My deposition came as somewhat of a surprise because, until September of 2007, I had understood that Mr. Darbeau had not requested my deposition and I understood that PTFS' counsel was waiting for discovery to close before filing PTFS' motion for summary judgment.  While Mr. Darbeau's termination was a significant event for him, my experience with Mr. Darbeau had been very limited since he had only worked for PTFS for a little over three (3) months before Ms. Holmes had requested that he be replaced for performance reasons and had provided ample examples in connection with her request.  While I knew that Mr. Darbeau had made the decision to continue to prosecute his claim for age discrimination against PTFS after he dismissed the Library of Congress from his lawsuit and while I had provided assistance to PTFS' counsel so that she understood the circumstances surrounding Mr. Darbeau's hiring and firing, I had very little direct involvement in Mr. Darbeau's litigation until Mr. Darbeau requested my deposition in mid September of 2007.

7

16.    I frankly had forgotten how Ms. Holmes had communicated her dissatisfaction to me about Mr. Darbeau's performance, and, from my memory alone, I only remembered that Ms. Holmes had made the communication to me that she found Mr. Darbeau to be unsatisfactory and that he should not return to his assignment when he completed his leave.  During the course of this litigation, I had searched my records for any documents relating to either Mr. Darbeau's hiring and firing without discovering the email sent to me by Ms. Holmes on December 29, 2005. At the outset of my first involvement in this litigation, my recollection of Mr. Darbeau's hiring and firing, without having my memory first refreshed by the excerpts from the email communication that Mr. Darbeau provided in discovery in July of 2007, was that I had received a very direct communication from Ms. Holmes that indicated that Mr. Darbeau's performance was unsatisfactory, that gave me detailed reasons for Ms. Holmes' conclusion about Mr. Darbeau's performance, and that directed that Mr. Darbeau be replaced with another senior contract specialist.  Until I saw the excerpts from the email that Mr. Darbeau had provided at his deposition in July of 2007, I had recalled and presumed based upon my memory of the events that the communication from Ms. Holmes to me was verbal, and not in writing, because I had not been able to locate any correspondence from Ms. Holmes to me about Mr. Darbeau in my initial search for records and I had not printed up the email that Ms. Holmes had sent to me for Mr. Darbeau's personnel file.  At the time that Mr. Darbeau was terminated, his termination was very straightforward and did not involve any debate.  PTFS had only employed Mr. Darbeau for a short time, and PTFS' customer, the Library of Congress, dictated that Mr. Darbeau be removed from the PTFS contract.

16.    Prior to my deposition, and in preparation for my deposition, I reviewed the

excerpts from the email which Ms. Holmes had sent to me in December of 2005 regarding her

evaluation of Mr. Darbeau's performance during the two (2) months plus that she had supervised

him and which the plaintiff had provided to PTFS' counsel at his deposition. A copy of that

document provided by the plaintiff is attached to this Affidavit as Exhibit 7A. Prior to my

deposition, I had learned that Mr. Darbeau had produced the email to PTFS' counsel at his

deposition on July 3, 2007 and that Mr. Darbeau testified that he had obtained the email from me

during the meeting among Mr. Darbeau, myself, and Ms. Anne Thomas, PTFS' Human

Resources Manager and Facility Security Officer, in December of 2005. I did not read Mr.

Darbeau's deposition, but it was my understanding that Mr. Darbeau testified that I gave him the

excerpts in our meeting to discuss why Ms. Holmes had asked for his replacement and why PTFS

had to terminate him as a result. I recognized the excerpts from the email when I saw it, and it

refreshed my memory that I had received an email from Ms. Holmes in which she had

communicated her dissatisfaction with Mr. Darbeau's performance. Prior to my deposition, I did

not contact either Ms. Holmes or Mr. Johnson to compare my recollection to theirs and testified

solely from my memory of the circumstances regarding Mr. Darbeau's hiring and firing which

had been somewhat refreshed by the excerpts from the email. Because I did not have the full text

of the email available to me until after the deposition, and after reviewing Exhibit 7A, I thought

that the communication made to me by Ms. Holmes merely concerned Mr. Darbeau's

performance issues. More importantly, I did not remember that Ms. Holmes and I had first

spoken about Mr. Darbeau before she sent me the email. Consequently, I did testify from my

memory on September 20, 2007, at page 29/lines 8-15, that Ms. Holmes had not given me any

indication that there were problems with the performance of Mr. Darbeau prior to my receipt of

9

the email, which was wrong.

17.     Following my deposition, and after seeing the email that Mr. Darbeau provided

for a second time, I took the initiative and again went back and checked all my email folders to

look for the electronic copy of the original email, which I found, unfortunately, after my

deposition.  A copy of that original email is attached hereto as Exhibit 7(B) and is a true and

accurate copy of the email that was sent to me by Ms. Holmes on December 29, 2005.

18.     In reviewing the original email, I read that Ms. Holmes had referenced that she

had verbally discussed Mr. Darbeau's unsatisfactory performance and the performance of the

other PTFS' employees with me before the Christmas holidays.  After reading the full text of the

email (Exhibit 7B), my recollection was refreshed, and I remembered that Ms. Holmes had first

spoken to me to relay her dissatisfaction with Mr. Darbeau and to provide me with evaluations

about the other PTFS employees that she had been supervising a few days before she sent me the

email that summarized those discussions.  Certainly, if I had located the full text of the email

prior to my deposition, my testimony about Ms. Holmes' communications with me would have

been more precise; however, the substance of my testimony in my deposition was entirely

truthful and accurate based upon my memory at the time about the communication that I received

from Ms. Holmes; namely, that Ms. Holmes had expressed dissatisfaction with Mr. Darbeau, that

Ms. Holmes had provided detailed and specific reasons for her evaluation of Mr. Darbeau, that

Ms. Holmes had requested that Mr. Darbeau be replaced with an equivalent senior contract

specialist, that PTFS had no reason or basis to question Ms. Holmes' evaluation because of her

direct working relationship with Mr. Darbeau, and that, under the circumstances, PTFS had no

choice but to comply with its customer's directives as to all of the PTFS employees working

under the PTFS contract, including Mr. Darbeau.  Having the full text of the email (Exhibit 7B)

would have caused me to remember that I had a verbal discussion with Ms. Holmes about Mr.

Darbeau and the other PTFS employees first and then received the confirming email.  Because I

only had the partial email text in advance of my deposition (Exhibit 7A), I incorrectly assumed

that I had only received Ms. Holmes' communications about Mr. Darbeau in the email that she

sent.

19.    I understand that Mr. Darbeau, who had the excerpts of the email since December

of 2005, has now suggested that PTFS purposely withheld the email, which is absolutely untrue.

I would have benefitted from having the email to prepare for my deposition, and my testimony

would have been more precise not only about Mr. Darbeau's situation but also about Ms.

Holmes' evaluation of other PTFS employees in December of 2005.  PTFS was the only party

that suffered from my inability to discover the full text of the email and from my temporary

memory lapse at the time that I was deposed since I was handicapped in not remembering all of

the details regarding how many communications that I had with Ms. Holmes about Mr. Darbeau

and other employees in December of 2005, that is two as opposed to my memory about the one

email communication that I remembered when I was deposed.  Furthermore, had I found the

email sooner, I would also have been able to provide more detail about Ms. Holmes'

communications to me in the email, including that she found several older workers to be

excellent and including that she found at least one younger PTFS worker, Chelsea Baker, to have

performance issues at the same time that she found Mr. Darbeau's performance to be

unacceptable, all of which facts show that age was never a factor in Ms. Holmes' evaluations of

PTFS workers.  The fact that my memory was refreshed by having the full text of the email does

11

not change the facts to which I testified in my deposition, i.e. that Ms. Holmes, in my judgment, was justified in, and authorized to, ask for Mr. Darbeau to be replaced because of her knowledge about his performance issues and that PTFS had to accede to her requests since she was working directly with the PTFS employees that PTFS has provided to her and to her division at the Library of Congress. As Exhibit 7B illustrates, PTFS was told by the Library of Congress to replace Mr. Darbeau and had no choice in the matter based upon Ms. Holmes' knowledge about Mr. Darbeau's performance and her judgment that his performance warranted his removal from the Library of Congress contract that PTFS had with it.

I affirm that this Affidavit is executed on this _____ day of November, 2007, under penalties of perjury, and that its contents are true and correct:

Sheila Hess

12