UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SELWYN G. DARBEAU, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) ) | Civil Action No. 06-01081 (AK) |
| PROGRESSIVE TECHNOLOGY FEDERAL SYSTEMS, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Pending before this Court is a Motion for Summary Judgment ("Motion") [42] by Defendant Progressive Technology Federal Systems, Inc. ("Defendant"); Plaintiff Selwyn Darbeau's ("Plaintiff") opposition to Defendant's Motion ("Opposition") [43]; and Defendant's reply to Plaintiff's Opposition ("Reply") [44]. Upon consideration of the Motion, Opposition and Reply, and a hearing on the Motion having been held on March 13, 2008, for the reasons set forth below, Defendant's Motion is GRANTED. An appropriate Order accompanies this Memorandum Opinion.

**I. Background**

Plaintiff Selwyn G. Darbeau ("Darbeau") filed this civil action on June 14, 2006, and he subsequently amended his complaint two times, resulting in his Second Amended Complaint [34], which contains one count alleging age discrimination against Defendant Progressive Technology Federal Systems, Inc. ("Progressive"). Progressive is a Maryland corporation "which at all time[s] relevant to the complaint was engaged in the business of providing services

to various government agencies on a contract basis." (Second Amended Complaint at ¶4.) Plaintiff was employed by Progressive from September 8, 2005 until January 4, 2006, as a contract specialist. (Motion, Exh.1 (Darbeau deposition transcript) at 46-47.)  Prior to his employment with Progressive, the Plaintiff had been working as a contract specialist for Jordan & Howard Technologies, Inc. (Jordan & Howard"), a private company which contracted with the federal government to provide various services for government agencies, since December 2003. (Exh. 1 at 17-18; Second Amended Complaint at ¶5.)  Plaintiff was assigned to the Library of Congress and performed financial services relating to purchasing and payment of bills. (Second Amended Complaint at ¶6.)

In September 2005, Defendant Progressive began handling the Library of Congress ("LOC") contract that was previously being handled by Jordan & Howard. In connection with acquisition of the LOC contract, Progressive "was asked to absorb all of the affected employees of the [previous] contractor, and not just Mr. Darbeau, so that those workers would not be terminated when the [Jordan & Howard] contract expired." (Reply, Exh. 7 (Affidavit of Sheila Hess) at ¶5; Motion Exh. 2 (Hess Deposition transcript) at 18-19, 22.)  Sheila Hess was the director of the professional services division at Progressive and Darbeau's supervisor during his employment with Progressive. (Exh. 1 at 49; Exh. 2 at 21-22, 25; Exh. 7 at ¶2.)

Beginning in October 2005, Plaintiff's direct supervisor at the LOC was LOC employee Ursula Holmes ("Holmes"). (Exh. 1 at 22-23.) Holmes was Contracting Officer's Technical Representative and head of operations for the contract team, who was responsible for giving Plaintiff his work assignments at the Library of Congress. (Motion, Exh. 2 (Hess Deposition Transcript) at 20-25; Exh. 3 (Ursula Homes Affidavit) at ¶¶3-4; Exh. 7 at ¶6.)

In mid-December 2005, Holmes indicated to Progressive that Plaintiff should be terminated for poor work performance. (Exh. 3 at ¶¶7-10.) Holmes communicated her decision to Hess orally in December 2005, and via electronic mail on December 29, 2005. (Exh. 2 at 5, 24; Exh. 3 at ¶¶9-10; *see also* amended copy of e-mail [3A] attached as Exhibit 7B.) In her correspondence with Hess, Holmes also expressed dissatisfaction and performance concerns about certain other contractual employees of Progressive and at least one of these employees was under the age of 40. (Exh. 2 at 38-40; Exh. 3 at ¶12; Exh. 7 at ¶11; Exh. 7B.) In contrast, Holmes praised the performance of certain employees, at least one of whom was approximately 50 years of age. (Exh. 7 at ¶11; Exh. 7B.) Plaintiff's employment was subsequently terminated by Sheila Hess, on behalf of Progressive, on or about January 4, 2006. (Exh. 1 at 50-51; Exh. 2 at 32-34.) On June 14, 2006, Plaintiff filed his Complaint alleging age discrimination, noting that the EEOC issued a Dismissal and Notice of Rights on March 30, 2006.

Defendant filed the instant Motion for Summary Judgment on October 9, 2007, alleging that Plaintiff cannot establish a claim for age discrimination because "plaintiff has no admissible evidence whatsoever that his termination from the employment of defendant [Progressive] was [based on] illegal discrimination because of his age." (Memorandum of Points and Authorities in support of Motion ("Points and Authorities") at 5).

## II. Legal Standard
### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), a court should grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions . . ., together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson*, 477 U.S. at 248.

The nonmoving party must demonstrate specific facts in the record which create a genuine issue as to a material fact to oppose the motion for summary judgment. To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson*, 477 U.S. at 248; *see also Laningham v. U.S. Navy*, 813 F. 2d 1236, 1242-43 (D.C. Cir. 1987).

Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. The nonmoving party must establish more than "the mere existence of a scintilla of evidence" to support its position. *Anderson* at 252. The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he can provide "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006) or "support his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). The court may grant summary judgment if there is no significantly probative evidence tending to support the complaint. *Shields v. Eli Lilly*, 895 F.2d 1463 (D.C. Cir. 1990).

**B. Burden of Proof**

Under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623 (a)(1); *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 141 (2000). The plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Id.* at 141 (citation omitted). This Circuit extends to ADEA cases the system for allocation of evidentiary burdens that has evolved in Title VII discrimination cases under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Forman v. Small*, 271 F. 3d 285, 292 (D.C. Cir. 2001), *cert. denied*, 526 U.S. 958 (2002); *Cuddy v. Carmen*, 762 F. 2d 119 (D.C. Cir. 1985); *Krodel v. Young*, 748 F. 2d 701, 705 (D.C. Cir. 1984), *cert. denied*, 474 U.S. 817 (1985). Under this framework, the plaintiff carries the burden of establishing a prima facie case of age discrimination. *McDonnell Douglas,* 411 U.S. at 802.

To make a prima facie case of age discrimination, Plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was "a determining factor" in the employment decision. *May v. Shuttle, Inc.*, 129 F. 3d 165, 17 (D.C. Cir. 1997), *cert. den.*, 524 U.S. 927 (1998); *Cuddy*, 694 F. 2d at 856-58. In order to create a reasonable inference the Plaintiff must show that: (1) he belongs to the statutorily protected age group (40-70), (2) he suffered an adverse employment action and, (3) the unfavorable action gives rise to an inference of discrimination. *Chappell-Johnson v. Powell* 440 F.3d 484, 488 (D.C. Cir. 2006).

After the plaintiff has carried his burden of establishing a prima facie case of discrimination, by a preponderance of the evidence, the burden of production shifts to the

defendant employer to provide evidence of a legitimate, nondiscriminatory reason for its action. *Reeves*, 530 U.S. at 142 (citation omitted); *Waterhouse* v. *District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002), *aff'd.*, 298 F. 3d 989 (D.C. Cir. 2002) (citations omitted). If the defendant satisfies its burden of producing an explanation for the contested employment decision, the plaintiff must then discredit the defendant employer's stated reason by means of rebuttal evidence. *Waterhouse*, 298 F. 3d at 992 (citing *Aka v. Washington Hospital Center*, 156 F. 3d 1284, 1290 (D.C. Cir. 1998)).

Therefore, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Waterhouse*, 298 F. 3d at 992 (citing *Reeves*, 530 U.S. at 143, and quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The focus at the summary judgment stage is whether a jury could infer discrimination from the combination of: "(1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to rebut the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) . . ." *Aka*, 156 F. 3d at 1289 (citations omitted).

### III. ANALYSIS
### A. Elements of Plaintiff's Prima Facie Case

Plaintiff argues that he has established the existence of a prima facie case of age discrimination because he has shown that "he belongs to [a] protected age group, was qualified for [the contract specialist] position, was terminated, and was replaced by a younger person." (Memorandum at 5, citing *Paquin v Federal Nat'l Mortgage Ass'n.*, 119 F3d 23, 26 (D.C. Cir. 1997); ADEA, §2 *et seq.*) Progressive does not dispute that Plaintiff is a member of a protected

-6-

age group, nor can Defendant contest the fact that it believed Plaintiff possessed the basic qualifications to work as a contract specialist as evidenced by the fact that Darbeau had worked as a contract specialist on the LOC contract prior to being hired by Progressive.[1]

It is undisputed that Plaintiff, a member of the protected class, suffered an adverse employment decision when his employment was terminated; what is at issue in this matter is the reason underlying that termination. Plaintiff alleges that he was terminated because his supervisor at the LOC, Ms. Homes, had a preference for younger workers while Defendant contends that the termination decision was based on Plaintiff's unsatisfactory work performance, unrelated to Plaintiff's age. Defendant acknowledges that the replacement selectee for the contract specialist position was younger than forty and less experienced than Darbeau (Exh. 7 at ¶13), but disputes that such person was treated more favorably than Plaintiff.

### 1. Plaintiff's Performance and Termination

Defendant asserts that Plaintiff's prima facie case fails because Darbeau proffers no evidence of illegal discrimination. Defendant contends that, "[t]he only admissible and undisputed evidence is that a worker's age was never a factor in Ms. Holmes' performance decisions, including Ms. Holmes' decision to replace the plaintiff." (Points and Authorities at 5; *see* Exh. 1 at 81, 83-86; Exh. 3 at ¶¶5-6; Exh. 7 at ¶¶9-11; Exh. 7B.) Defendant argues that Plaintiff's termination resulted from "the plaintiff's unsatisfactory performance for defendant's

---

[1] Defendant indicates that when it was asked to absorb contractors who had been working on the LOC contract, it was not given any "specifics about the performance of the affected workers," nor did Progressive "independently determine, or verify, the competency of those employees that it absorbed, but, in September of 2005, placed them in job positions under the [Progressive] contract with the [LOC] based upon the skills that the employees should have had based upon the work . . . [they] had been performing . . . for the other contractor." (Exh. 7 at ¶5.)

customer, and not his age, and as a result of the defendant [Progressive's] legitimate, non-discriminatory reasons." (Points and Authorities at 5, referencing Exh. 4 at 7-8 [Defendant's Answers to Interrogatories 6 and 8].)[2]  *See also* Exh. 3 at ¶¶7-8; Exh. 3A; Exh. 7 at ¶¶7, 9-12, Exh. 7B. The reasons included that the "on-site supervisory representative of the defendant's customer complained, with documented reasons, that Mr. Darbeau's performance was unacceptable and demanded that he be replaced." (Reply at 5; *see* Exh. 7 at ¶¶ 7, 10; Exh. 7B.) Defendant asserts that "[t]he plaintiff's termination by Progressive resulted from the documented dissatisfaction of the defendant's customer about the plaintiff's performance, from the insistence that the plaintiff be immediately replaced . . . , and from the lack of an alternative senior contract specialist work opportunity for the plaintiff with the defendant." (Exh. 7 at ¶7.)

The Plaintiff has not produced any evidence regarding his prior performance as a contract specialist nor has he produced evidence contradicting Ms. Holmes' performance evaluation.  *See* Exh. 5, Plaintiff's Answers to Interrogatories Nos. 11, 19; *see also* Exh. 6, Plaintiff's Responses to Requests for Production Nos. 8, 13.  The only record evidence of Plaintiff's performance is his evaluation by Holmes; furthermore, the record reflects that Hess relied on Holmes' evaluations to determine whether the Progressive contractors [including the Plaintiff] were performing in a satisfactory manner.  (Exh. 7 at ¶12; Exh. 2 at 25, 27-29, 31-32.)  Accordingly, there is nothing in the record before this Court or the Plaintiff's Opposition that contradicts the conclusion that Plaintiff's termination was based on his work performance, and not his age.  Plaintiff's belief that age played a role in his termination (Exh. 1 at 80) is just that: an unsupported personal belief that

---

[2]Defendant notes that even after it was required to remove plaintiff for performance deficiencies, Progressive tried to find another position for him and extended his effective date of termination so as to not disrupt his elective medical surgery.  (Points and Authorities at 6.)

does not carry the necessary weight to establish that Plaintiff's age was a determining factor in his termination. Plaintiff does not proffer any evidence to support his bald allegations that the reasons for his termination were false or that age discrimination was the real reason. Plaintiff has failed in his obligation to "support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001). *See Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007) (to survive summary judgment, the plaintiff has to show that the reasons given by defendant were false and discrimination was the real reason.)

In connection with his Opposition to the Motion, Plaintiff proffers a "Statement of Material Facts" but none of the facts therein are found by this Court to be material, disputed facts that would preclude summary judgment. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987.) For example, Plaintiff states that "Ursula Holmes did not provide any supporting documentation to the e-mail" and "Defendant did not conduct any investigation of the allegations against the plaintiff" and "Defendant fails to maintain employment records relating to employees' ages." (Statement of Material Facts at ¶¶9-11.) Ms. Holmes electronic mail criticizing the Plaintiff's performance is unrebutted in this case and whether or not supporting documentation was attached is of no consequence. Defendant did not conduct an investigation into Holmes' critique of Plaintiff's performance because Plaintiff waited until after he was terminated to complain of age discrimination (Exh. 1 at 96-97) and furthermore, Holmes provided detailed reasons and

-9-

examples of Plaintiff's deficient performance. Plaintiff fails to indicate the significance, if any, of Defendant's alleged failure to maintain employment records relating to employees' ages. If there is any significance to this fact, it supports Defendant's contention that termination decisions were not age-based but instead performance-based.

### 2. Treatment of Plaintiff's Successor

In the instant case, Plaintiff concludes that because he was more experienced than the [age under 40] applicant who was selected to replace him, Kelly L. Green, that selectee must have received more favorable treatment. *See* Memorandum at 6, n.2. Holmes, who expressed her dissatisfaction with Plaintiff's performance and directed that he be replaced, denies that she had a preference for younger workers (Exh.3 at ¶¶5-6, 13) and Plaintiff proffers no evidence to the contrary. (Exh. 1 at 84-85.) The record before the Court indicates that Holmes voiced disapproval regarding the work performance of several contractors under the age of forty and praised the performance of an older worker. (Exh. 3A; Exh. 7 at ¶¶11, 13; Exh. 7B.) Defendant notes that Green was "only hired long after the decision was made by the Library of Congress to remove Mr. Darbeau from the contract since the defendant did not have any experienced contract specialists to provide as a replacement which was Ms. Holmes' preference." (Reply at 4; *see also* Exh. 7 at ¶13.) According to Hess, Holmes requested that Progressive provide her with a minimum of three resumes for a replacement for Darbeau and suggested that if Progressive was unable to find a "fully functioning contract specialist with federal acquisition experience, [she would] accept an entry level contract specialist that [she could] train." (Exh. 7B) Holmes made no mention of age in her correspondence with Hess. In her Affidavit, Hess states that Progressive was unable to provide Holmes with trained and independent contract specialists who

had federal acquisition experience and thus, "Ms. Holmes reluctantly agreed to accept Mr. Kelly Green as an entry level contract specialist at a reduced hourly rate under the contract because of the training that Mr. Green needed from the [LOC] personnel." (Exh. 7 at ¶13.)  Rebutting Plaintiff's claim that Green was treated more favorably, Hess indicates that when Holmes "became dissatisfied with Mr. Green based upon performance issues that he had, [ ] he eventually was replaced at her request." (*Id.*)

The Court finds that Plaintiff has produced no evidence, direct or indirect, that shows that Ms. Holmes treated younger workers preferentially. (Exh. 1 at 84-85; Exh. 5, Plaintiff's Answers to Interrogatories 13, 14, 15, and 19.)  Plaintiff's belief that he was more qualified for the position than the selectee is not the relevant issue; instead, to raise an inference of disparate treatment in an age discrimination case, a plaintiff "must point to a worker with a 'significant' or 'substantial' difference in age whose employment situation was nearly identical, but who was treated more favorably."  *Beeck v. Federal Express Corp.*, 81 F. Supp.2d 48, 54 (D.D.C. 2000). Plaintiff makes no attempt to meet this standard.

### 3. No Evidence of Age Discrimination

Assuming *arguendo* that Plaintiff has proved his prima facie case, a presumption would arise that Progressive unlawfully discriminated against Darbeau. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The burden would then shift to Progressive "to articulate some legitimate nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802.  In the instant case, Progressive notes that it had "multiple legitimate and non-discriminatory reasons for . . . terminat[ing] the plaintiff after its contractual customer, through Ms. Holmes, not only complained about the plaintiff's

performance but also articulated specific examples to justify her performance[-]based conclusions that the plaintiff's performance was poor and after it was unable to find replacement employment for the plaintiff." (Points and Authorities at 7-8.) There is nothing in the record before this Court to indicate that there was any reason for Plaintiff's termination other than his unsatisfactory performance or that Kelly received more favorable treatment than Darbeau. In this case, Darbeau and Kelly did not compete for the same position but instead Darbeau was hired by Progressive, and he received a pay raise in connection with his employment. Plaintiff's employment was later terminated after he failed to perform adequately but not before Progressive attempted to find another position for him. Kelly was subsequently hired to fill the position vacated by Darbeau but there has been no indication that Kelly was treated more favorably, particularly when he was hired at a reduced hourly rate and was later replaced when Holmes became dissatisfied with his performance. Accordingly, even if Plaintiff had proved his *prima facie* case, Defendant has proffered legitimate business reasons for the adverse action [termination] and the legitimacy of Defendant's reasons is unrebutted by Plaintiff.

### 4. Denying Summary Judgment as a Sanction

In connection with his Opposition to the Motion for Summary Judgment, Plaintiff claims that he was prejudiced by Defendant's failure to previously produce Exhibit 3A in its entirety and that this is a genuine issue of material fact which should preclude summary judgment.[3] The reasons surrounding Defendant's failure to immediately produce a complete version of Exhibit 3A are explained by Hess, in detail, in her Affidavit. (Exh. 7 at ¶¶15-19.) Hess indicates that she was deposed on September 20, 2007, about eighteen months after Darbeau's employment was

---

[3]Exhibit 7B is an amended copy of Exhibit 3A.

terminated. At that time, Hess recollected that Holmes had verbally communicated her dissatisfaction with Plaintiff's work performance. It was not until after her deposition that she saw excerpts from the electronic mail Darbeau provided at his July 2007 deposition [a portion of Exhibit 3A] and she recollected that Holmes had also communicated with her in writing. After Hess had her memory refreshed, she located the complete electronic mail and a copy was produced to the Plaintiff in November 2007. Hess indicates that if she had:

> located the full text of the email prior to [her] deposition, [her] testimony about Ms. Holmes' communications with [her] would have been more precise; however, the substance of [her] testimony in [her] deposition was entirely truthful and accurate based upon [her] memory at the time about the communication [she] received from Ms. Holmes; namely, that Ms. Holmes had expressed dissatisfaction with Mr. Darbeau, that Ms. Holmes had provided detailed and specific reasons for her evaluation of Mr. Darbeau, that Ms. Holmes had requested that Mr. Darbeau be replaced with an equivalent senior contract specialist, that PTFS had no reason or basis to question Ms. Holmes' evaluation because of her direct working relationship with Mr. Darbeau, and that, under the circumstances, PTFS had no choice but to comply with its customer's directives as to all of the PTFS employees working under the PTFS contract, including Mr. Darbeau.

(Exh. 7 at ¶18.) Hess further states that Progressive was the party that suffered from her temporary memory lapse since she could not remember the details of her communications with Holmes, for example, that Holmes criticized the performance of a younger employee and praised the performance of an older employee. (Exh. 7 at ¶19.)

Plaintiff asserts that he was prejudiced because he did not receive a complete version of Exhibit 3A but Plaintiff's assertion of prejudice is not supported by the record in this case. Plaintiff makes no showing of any tangible harm that he suffered due to the late disclosure of a portion of this document.[4]

---

[4]Plaintiff did not request that discovery be reopened when the entire Exhibit 3A[7B] was produced nor did he move under Fed. R. Civ. P. 56(f) for additional discovery in connection with the instant summary judgment motion.

## IV. CONCLUSION

The undisputed facts establish that Plaintiff was terminated for reasons related to his performance and unrelated to his age. Accordingly, Plaintiff fails to establish the existence of a prima facie case of age discrimination, because he cannot show that his termination was motivated by age discrimination nor can he show that his replacement was given preferential treatment because of that person's age. There is not one shred of evidence that Progressive's decision to terminate Plaintiff's employment was related to Plaintiff's age. Nor has Plaintiff presented any evidence that Progressive tended to favor younger employees.

The Court finds that there is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law.


Dated: March 17, 2008                                  _____/s/_____
                                                       ALAN KAY
                                                       UNITED STATES MAGISTRATE JUDGE